FILED ___ ENTERED
LODGED ___ RECEIVED

DEC 23 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEP___

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL HODGELL, an individual,

Plaintiff,

v.

MEMOLINK, INC., a New York corporation,
TRIFECTA ADVERTISING, LLC, a
Colorado Limited Liability Company,
MINDSHARE DESIGN, INC., a California
corporation, TOPICA, INC., a California
corporation,

Defendants.

No. C02-2183Z

ORDER

This matter comes before the Court on Defendants' motion to dismiss for lack of personal jurisdiction, docket no. 4. For the reasons stated herein, the motion is DENIED.

**Background**

Defendants Memolink and Trifecta are nonresident businesses that market their goods and services through unsolicited commercial email ("spam" or "email") through the internet. See Defendants' Motion to Dismiss, docket no. 4, at 4. Defendants Mindshare and Topica, also nonresident businesses, assist customers in the transmission of commercial email. See id.

ORDER  -1-

1    Defendant Memolink is a New York corporation with its principal and only place of
2  business in Colorado.  See Asseoff Decl., docket no. 6, at 1.  Memolink has an ownership
3  interest in Defendant Trifecta and these two companies share office space and have the same
4  President.  See Hodgell Decl., docket no. 11, at 3.  However, Trifecta's business is separate
5  and distinct from Memolink's business.  See Asseoff Decl., docket no. 6, at 1-2.  Defendant
6  Trifecta is a Colorado Limited Liability Company with its principal and only place of
7  business in Colorado.  Trifecta is a customer of defendant Mindshare.  Memolink and
8  Trifecta contend that "they have not purposefully sent any electronic mail" to plaintiff or
9  "ever targeted any bulk e-mails or other advertisements to the state of Washington," Asseoff
10  did at p. 2.  However, neither defendant controverts plaintiff's allegations that unsolicited e-
11  mails reached plaintiff in Washington via the internet.

12    Defendant Mindshare is a California corporation with its principal and only place of
13  business in California.  Mindshare is in the business of providing infrastructure to allow its
14  customers to manage their databases and send commercial email.  See Bernard Decl., docket
15  no. 7, at 1.  Mindshare does not cause transmissions of its customers' commercial email
16  itself.  See id.  Rather, Mindshare provides the technical means for its customers to transmit
17  spam to various recipients at the same time.  See id. at 1-2.  Defendant Trifecta is a former
18  customer of Mindshare.  Memolink is not a customer of Mindshare.  See id. at 2.  Mindshare
19  also contends that it has not purposefully sent any spam to plaintiff or any other Washington
20  resident.  See id.  Mindshare also contends it has not targeted any spam, advertisements, or
21  other communications to the state of Washington.  See id.  Defendant Mindshare disputes
22  plaintiff's allegations that it conducts business in the state of Washington through spam
23  solicitations and Internet websites.

24    Defendant Topica is a Delaware corporation with its principal place of business in
25  California.  See Hostelley Decl., docket no. 9, at 1.  Topica has two business practices with
26  respect to email: (1) Topica offers free email list hosting for email list publishers (known as

ORDER  -2-

"list server" or "ListServ") and (2) Topica sends email advertisements on behalf of paying customers. With respect to Topica's first email business practice, its free ListServ service allows individuals to discuss various topics and interests via email. See id. at 1-2. This service handles subscription requests for mailing lists and distributes new messages and other postings from the list's members to the entire list of subscribers. See id. at 2. After subscribing to a particular ListServ, an individual will then receive all email sent from members of that ListServ. See id. Plaintiff has declared that he did not subscribe to such a ListServ; See Hodgell Decl., docket no. 11, at 8. Regarding its second email business practice, Topica has customers who pay it to send email advertisements on their behalf. Topica maintains that it has never purposefully sent any spam to Plaintiff. See Hostelley Decl., docket no. 9, at 1-2. However, Topica doesn't declare that it hasn't sent bulk spam or targeted spam, advertisements, or other communications to the state of Washington. Nor has defendant Topica disputed plaintiff's allegations that Topica conducts business in the state of Washington through spam solicitations and Internet websites.

Plaintiff alleges that defendants Memolink and Trifecta used defendant Mindshare's Postmaster General and Topica's Email Publisher email list management services to send their spam to the plaintiff. See Notice of Removal, docket no. 1, Ex. A, at 4. Plaintiff also alleges that the true origin of dozens of Memolink's spam were sent from an unknown Internet location, but were eventually sent through Mindshare's Postmaster General servers. See id. at 5. However, plaintiff asserts that in dozens of the spam sent by or through defendants, there was no way for the recipient to know the true identity and origin of the customer sending the spam from either the email header or their spam's content. See id. Defendants Memolink and Trifecta also sent spam from the domain name "justforyounewsletter.com," which is registered to defendant Trifecta. See Notice of Removal, docket no. 1, Ex. A, at 7. The spam sent to plaintiff from the "justforyounewsletter.com" domain name were sent from untraceable, unassigned and

obscure private network identification numbers. See id. Plaintiff also asserts that defendants used third party Internet domain name "hotmail.com," owned by Microsoft,  without permission, in the "to" field, which is part of the transmission path. See Hodgell Decl., docket no. 11, at 4; Notice of Removal, docket no. 1, Ex. A, at 7. Many of defendants' spam allegedly contained false or misleading subject lines, such as: "It's too late?" and "Pinch me" and "Never Pay Another Phone Bill Again!" See Notice of Removal, docket no. 1, Ex. A, at 8.

Plaintiff contacted defendants by phone and by replying to the "from" email addresses used by the defendants after receiving unsolicited spam from them. Specifically, plaintiff contacted Mindshare, and Memolink and Trifecta's President in April, 2002, and he contacted Topica in May 2002. During this contact, plaintiff informed defendants that he was a Washington state resident, that he did not want to receive more spam from them, and he also informed defendants that he believed the spam they were sending to Washington was in violation of Washington law. See Hodgell Decl., docket no. 11, at 2-4. Despite his efforts, including the filing of this lawsuit, plaintiff continues to receive spam from all the defendants. See id at 5-6. In total, plaintiff Hodgell has received 555 spam from defendants at his hotmail address: joelhodgell@hotmail.com. See id at 4.

Plaintiff's email address is registered in the Washington Association of Internet Service Providers ("WAISP") registry and (2) plaintiff's residency information is available, upon request, from the registrants of the Internet domain names used in his email addresses.[1] See id.

---

[1]In a Declaration before the Court, James Kendall, the President of WAISP states that in order to combat the problem of spam received by Washington residents, "WAISP, in conjunction with the Office of the Washington Attorney General, developed in 1998 a registry in which Washington residents could, for free, give notice to anyone intending to send spam into the State of Washington that the registrants are residents of Washington. Any person can, for free, enter an email address into the registry and discover whether that email address belongs to a Washington resident who has registered that address." See Kendall Decl., docket no. 12, at 2.

ORDER  -4-

1   Defendants are nonresidents who have no offices, statutory agents, telephone listings,
2   employees, vendors, bank accounts, licenses or operations in Washington state.  See Asseoff
3   Decl., docket no. 6, at 1-2; Bernard Decl., docket no. 7, at 1-2; Hostelley Decl., docket no. 9,
4   at 1-2.  Defendants have had no contact with plaintiff other than through the distribution of
5   spam via the Internet.  See id.  Defendants therefore argue that significant contacts do not
6   exist that would establish general jurisdiction over them.  See id.  Furthermore, defendants
7   argue that specific jurisdiction cannot be established because they did not purposefully avail
8   themselves to this forum.  See Motion to Dismiss, docket no. 4, at 4-5.

9   Defendants argue that the email addresses to which defendants sent spam do not
10  contain area codes or addresses that would designate the location of the recipient.  See id. at
11  4.  Defendants also argue that because email can be accessed anywhere in the world via the
12  Internet, email cannot be purposefully sent to a particular geographic location.  See
13  Townsend Decl., docket 5, at 3.

14  Defendants also argue that the fact that plaintiff's email addresses are registered with
15  WAISP is not enough to extend personal jurisdiction to them.  See Motion to Dismiss, docket
16  no. 4, at 4-5.  Defendants assert that the WAISP registry page on the WAISP website permits
17  registered users to input a single email address and the site will send an email message to the
18  registered user stating whether the entered email address was "found" in its database "as
19  belonging to a Washington email address holder."  See id.  The responsive email message
20  sent by the WAISP site does not indicate which email in question was in its database
21  therefore, bulk review of email addresses is not feasible.  See Townsend Decl., at 9.

22

## DISCUSSION

23  **RCW 19.190**

24  RCW 19.190.020 states in relevant part that:

25      (1) No person may initiate the transmission, conspire with another to initiate
26      the transmission, or assist the transmission, of a commercial electronic mail
        message from a computer located in Washington or to an electronic mail

ORDER  -5-

1

address that the sender knows, or has reason to know, is held by a
Washington resident that:

2

(a) Uses a third-party's internet domain name without permission of the third
party, or otherwise misrepresents or obscures any information in identifying

3

the point of origin or the transmission path of a commercial electronic mail
message; or

4

5

(b) Contains false or misleading information in the subject line.

6

(2) For purposes of this section, a person knows that the intended recipient
of a commercial electronic mail message is a Washington resident if that

7

information is available, upon request, from the registrant of the internet
domain name contained in the recipient's electronic mail address.

8

9   RCW 19.190.030 makes a violation of the Act a per se violation of the Consumer Protection

10  Act, RCW 19.86.  Plaintiff has alleged violations of RCW 19.190.030 and RCW 19.86.020,

11  et seq.  See Notice of Removal, docket no. 1, Ex. A, at 8.  Plaintiff has also alleged acts of

12  trespass to chattels, theft of services, which resulted in the loss of use, value, and additional

13  work and related expenses relating to computer equipment and Internet service.  See Notice

14  of Removal, docket no. 1, Ex. A, at 9.  Plaintiff request the Court award him monetary

15  damages as per RCW 19.190.040, treble punitive damages as per RCW 19.86 .090,

16  additional damages for trespass to chattels, harassment, and theft of services.  Id.  Plaintiff

17  also request the Court issue a permanent injunction enjoining and restraining defendants from

18  continuing or engaging in the "unlawful conduct" alleged in the Complaint.  See Notice of

19  Removal, docket no. 1, Ex. A, at 11.

20  Defendants now move to dismiss for lack of personal jurisdiction, docket no. 4.

21  **I.     Jurisdiction**

22  There are two recognized bases for personal jurisdiction over nonresident defendants:

23  (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so

24  pervasive as to justify the exercise of jurisdiction over the person in all matters, and (2)

25  "specific jurisdiction" which arises out of the defendant's contacts with the forum giving rise

26  to the subject litigation.  Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F.

1  Supp. 743, 95 Daily Journal D.A.R. 10 (C.D.Cal. 1995) (citing Helicopteros Nacionales de
2  Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

3           When a motion to dismiss for lack of personal jurisdiction is made as a defendant's
4  initial response to a complaint, Fed. R. Civ. P. 12(b)(2) controls and states that the court may
5  consider evidence presented in affidavits to assist it in its determination and may also order
6  discovery on the jurisdictional issues. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir.
7  2001). However, when a district court acts on a defendant's motion to dismiss without
8  holding an evidentiary hearing, the plaintiff need make only a prima facie showing of
9  jurisdictional facts to withstand the motion to dismiss. Id; Data Disc, Inc. v. Sys. Technology
10 Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). In this context, a "prima facia" showing
11 means that plaintiff has produced admissible evidence which, if believed, would be sufficient
12 to establish the existence of personal jurisdiction. See WNS, Inc. v. Farrow, 884 F.2d 200,
13 203-204 (5th Cir. 1989). Unless directly controverted, the plaintiff's version of the facts is
14 taken as true. Doe, 248 F.3d at 922. Conflicts in the evidence set forth in the parties'
15 affidavits must be resolved in the plaintiff's favor. Id.

16 **II.     General Jurisdiction**

17          General personal jurisdiction exists when a nonresident defendant conducts substantial
18 and continuous business in the state of Washington. CTVC of Haw. Co., Ltd. v. Shinawatra,
19 82 Wn. App. 699, 709, 919 P.2d 1243 (1996). The parties seem to agree that defendants
20 have not had sufficient contacts with Washington to subject them to general jurisdiction. See
21 defendants' Motion to Dismiss, docket no. 4, at 6-7; plaintiff's Response, docket no. 10, at 6.
22 Accordingly, only specific jurisdiction is currently at issue.

23 **III.    Specific Jurisdiction**

24          Sitting in diversity, this Court may exercise specific jurisdiction over a nonresident
25 defendant only if jurisdiction is proper under Washington's long-arm statute and comports
26 with federal constitutional due process principles. See Fireman's Fund Ins. Co. v. Nat. Bank

ORDER  -7-

1   of Coops., 103 F.3d 888, 893 (9th Cir. 1996); Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d

2   1482, 1484 (9th Cir. 1993). Washington's long-arm statute, RCW 4.28.185, is co-extensive

3   with the outer limits of due process and as such prescribes that personal jurisdiction can only

4   be asserted over a non-resident defendant if the defendant has "minimum contacts" with the

5   forum state such that the exercise of jurisdiction does not "offend traditional notions of fair

6   play and substantial justice." Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316

7   (1945).

8          A singular three-part test governs whether this Court has specific personal jurisdiction

9   over nonresident defendants. Plaintiffs must demonstrate that (1) purposeful minimum

10  contacts exist between the defendants and the state of Washington; (2) plaintiffs' injuries

11  relate to or arise from those minimum contacts; and (3) the exercise of jurisdiction is

12  reasonable and consistent with traditional notions of fair play and substantial justice.

13  Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995); Grange Ins.

14  Ass'n. v. State, 110 Wn.2d 752, 758, 757 P.2d 933 (1988). All three prongs of the test must

15  be satisfied before specific jurisdiction may be exercised. Id.

16  **A.      Purposeful Direction or Availment - The "Effects" Test**

17         The purposeful direction or availment requirement for specific jurisdiction is analyzed

18  in intentional tort cases under the "effects" test derived from Calder v. Jones, 465 U.S. 783

19  (1984). Calder stands for the proposition that purposeful availment is satisfied even by a

20  defendant whose only contact with the foreign state is the 'purposeful direction' of a foreign

21  act having an effect in the forum state. Dole Food Co., Inc. v. Watts, 303 F.3d 1104 (9th Cir.

22  2002) (citing Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397

23  (9th Cir. 1986)). Based on Calder, the effects test requires that the defendant allegedly 1)

24  committed an intentional act, 2) expressly aimed at the forum state, 3) which caused a harm

25  that the defendant knew would likely be suffered by an entity in the forum state. Id.

26

1) **Intentional Act**: The parties are in agreement that the defendants did send spam which was received by plaintiff at his email address in Washington.

2) **"Expressly Aimed"**:  The "express aiming" requirement is met when "the defendant is alleged to have engaged in wrongful conduct targeted at the plaintiff whom the defendant knows to be a resident of the forum state."  Dole Food Co., 303 F.3d at 1111, citing Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

The 'expressly aimed' requirement seems to be the heart of the legal question before the Court.  Did the defendants, by sending or conspiring to send spam, expressly aim to send the spam to the plaintiff in Washington state?  Defendants argue that the email address to which the spam was sent did not contain an area code or mailing address that would designate the location of the recipient.  See Townsend Decl., docket no. 5, at 2.

Whether sending commercial electronic mail over the Internet is sufficient to establish personal jurisdiction has not been directly ruled upon by the Federal Courts.[2]  Defendants suggest the Ninth Circuit addressed the issue of purposeful availment as applied to Internet websites in Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997).  The court in Cybersell held that, in order for a website to give rise to personal jurisdiction, the website must have some presence in that jurisdiction and that it is not sufficient that it merely operates a "passive" website.  In Cybersell, the Ninth Circuit held that registering a domain name identical to a trademark and posting a web site via such domain name on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another.  See Cybersell, 130 F.3d at 418.  There must be "something more" to demonstrate that the defendant purposefully directed his activity in a substantial way toward the forum state.  See id.

---

[2]The Washington State Supreme Court recently ruled that Washington's commercial electronic mail act, RCW 19.190, does not violate the dormant Commerce Clause.  State v. Heckel, 143 Wn.2d 824 (2001).

ORDER  -9-

1    Cybersell isn't factually analogous to the case before the Court.  In Cybersell, the

2    court was analyzing the operation a "passive website."  In this case, defendants are being

3    charged with sending 555 misleading and/or deceptive unsolicited commercial spam

4    messages to a Washington resident.

5        Plaintiff looks to a recent decision, Verizon Online Services, Inc. v. Ralsky, 203

6    F.Supp.2d 601 (E.D. VA 2002), for support.  There, a Michigan spammer moved to dismiss

7    an action in Virginia based on personal jurisdiction grounds and in the alternative to transfer

8    venue to Michigan.  The court held that millions of spam sent to Verizon's subscribers

9    through Verizon's email servers constituted sufficient minimum contacts to satisfy

10   constitutional requirements.  Verizon Online Services, Inc., 203 F.Supp.2d at 604.

11       Once again, the facts are not analogous to the facts of our case.  Verizon had seven

12   email servers located in Virginia and alleged that the defendants sent millions of spam

13   messages through plaintiff's computer network over a period of several weeks.  See id at

14   607, 617.  As a result of this alleged conduct, Verizon was significantly harmed: 56 gigabytes

15   of server storage space was taken up, as well as hours of processing time.  In determining

16   whether the assertion of jurisdiction over defendants was proper, the court focused on the

17   number of email sent and the resulting harm to plaintiffs, reasoning that defendants "entered"

18   Virginia when the spam "overloaded Verizon's servers."  See id at 618.  The court reasoned

19   that "Defendants knew precisely where their spam was going-Verizon's email servers and its

20   customers...This is not a case where Defendants...simply released an email onto the

21   information superhighway with no direction."  See id at 619-620.  There are other similar

22   federal cases in which plaintiff owners of internet service providers suffered damages when

23   defendants sent high volumes of spam via plaintiff's servers causing significant damage to

24   plaintiff's business.  (See e.g., America Online, Inc. v. LCGM, Inc., 46 F.Supp.2d 444 (E.D.

25   VA 1998).

26

ORDER  -10-

1    Though the Washington Supreme Court has not addressed the jurisdiction question

2 now before this Court, the Heckel decision provides insight into how the statute is to be

3 interpreted. See State v. Heckel, 143 Wn.2d 824 (2001). In ruling that RCW 19.190 doesn't

4 violate the dormant Commerce Clause, the court did discuss, perhaps indirectly, related

5 jurisdictional issues:

6        "Heckel offers the hypothetical of a Washington resident who downloads
         and reads the deceptive spam while in Portland or Denver. He contends
7        that the dormant Commerce Clause is offended because the Act would
         regulate the recipient's conduct while out of state. However, the Act does
8        not burden interstate commerce by regulating when or where recipients
         may open the proscribed unsolicited commercial email messages. Rather,
9        the Act addresses the conduct of spammers in targeting Washington
         consumers. Moreover, the hypothetical mistakenly presumes that the Act
10       must be construed to apply to Washington residents when they are out of
         state, a construction that creates a jurisdictional question not at issue in
11       this case.

12 See id at 839.

13       These comments seem to take the wind out of defendants' argument that because

14 plaintiff could have accessed the spam anywhere, defendants did not purposefully avail

15 themselves to personal jurisdiction in Washington. Furthermore, the Heckel court suggests

16 that the analytical focus of the act must be on the spammers who target Washington residents

17 and not on where the spam could be accessed.

18       The Heckel court also held that registration on the www.registry.waisp.org website

19 was sufficient notice under RCW 19.190 to anyone sending commercial email to Washington

20 that the owner of the registrant's email address was a Washington resident. See Heckel, 143

21 Wn.2d at 837(stating that: "To initiate deceptive spam without violating the Act, a spammer

22 must weed out Washington residents by contacting the registrant of the domain name

23 contained in the recipient's email address. The Washington Association of Internet Service

24 Providers (WAISP) and the Washington Attorney General co-sponsor a registry of

25 Washington residents who do not want to receive spam.").

26

ORDER  -11-

1    This case does not require the Court to issue a ruling as to whether sending

2   commercial electronic mail over the Internet is sufficient to establish personal jurisdiction.

3   There is evidence before the Court that plaintiff received spam from the defendants even

4   after he informed them he was a Washington state resident, that he believed they were

5   violating Washington state laws, and requested they stop sending him spam.  Despite

6   plaintiff's efforts, defendants continued to send spam to plaintiff even after being served with

7   the Complaint in this lawsuit.  By ignoring plaintiff's requests, defendants purposefully

8   availed  themselves to jurisdiction in Washington state.

9   3)    **Harm Suffered in Forum State**:

10          **B.    Claims Arising out of Defendants' Activities**

11    The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's

12   claim arises out of a defendant's forum related activities.  Doe v. American Nat. Red Cross,

13   112 F.3d 1048, 1051 (9th Cir. 1997).  The "arising out of" requirement of the specific

14   jurisdiction test is met if "but for" the contacts between the defendant and the forum state, the

15   cause of action would not have arisen.  See Terracom v. Valley Nat. Bank, 49 F.3d 555, 560

16   (9th Cir. 1995).

17    The Washington Supreme Court has held that deceptive spam harms individual

18   Internet users.  See Heckel, 143 Wn.2d at 835.  The Heckel court stated:

19          When a spammer distorts the point of origin or transmission path of the
       message, email recipients cannot promptly and effectively respond to
20          the message (and thereby opt out of future mailings); their efforts to
       respond take time, cause frustration, and compound the problems that
21          Internet Service Providers face in delivering and storing bulk messages.
       And the use of false or misleading subject lines further hampers an
22          individual's ability to use computer time most effectively.

23   See id.

24    The parties agree that defendants sent spam that was received by plaintiff in

25   Washington.  'But for' defendant's efforts, plaintiff would not have been harmed.  Plaintiff

26   can meet the 'but for' test.

ORDER  -12-

## C.    **Reasonableness**

Once it has been determined that a defendant purposefully established minimum contacts with a forum state, the burden shifts and the defendant must "present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." Dole Food Co., Inc., 303 F.3d at 1114.  In determining whether the exercise of jurisdiction comports with fair play and substantial justice, and is therefore reasonable, seven factors are considered:

> (i) the extent of the defendant's purposeful injection into the forum state's affairs; (ii) the burden on the defendant of defending in the forum; (iii) the extent of conflict with the sovereignty of the defendant's state; (iv) the forum state's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the controversy; (vi) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative forum.  Burger King, Corp. v. Rudzewicz, 471 U.S. 462, 477-478 (1985); Dole Food Co., Inc., 303 F.3d at 1114.

No one factor is dispositive, and the district court must balance all seven.  Core-Vent Corp., 11 F.3d at 1488.

The Ninth Circuit has held that "[t]he degree to which a defendant interjects himself into the state affects the fairness of subjecting him to jurisdiction." Data Disc, Inc., 557 F.2d at 1288.

i) *Purposeful Interjection Into Forum State's Affairs*:  Plaintiff alleges defendants sent, or caused to be sent, more than 550 spam messages for the purpose of conduct business.  See Hodgell Decl., docket no. 11, at 2-5.  Plaintiff received this spam at his email address registered to him as a Washington state resident.  See id.  As a result, defendants purposefully interjected themselves into Washington state affairs by sending, or causing to be sent, email to Washington residents.

## D.    **Conclusion of Jurisdictional Analysis**

Because defendants were put on notice that they were sending spam to plaintiff and were informed that the spam may be in violation of Washington law, and because defendants

ORDER  -13-

1  continued to send spam to the plaintiff, plaintiff has met the jurisdictional standards set out

2  above.  Defendants' motion to dismiss is DENIED

3         IT IS SO ORDERED.

4         DATED this _20ᵗ_ day of December, 2002.

5

6                                              _____
                                                THOMAS S. ZILLY
7                                               UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER  -14-