

CV 02-02183 #00000032

FEB 19 2003

CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JOEL HODGELL, an individual,

        Plaintiff,

v

MEMOLINK, INC., a New York corporation,
TRIFECTA ADVERTISING, LLC, a Colorado
Limited Liability Company, MINDSHARE
DESIGN, INC , a California corporation,
TOPICA, INC., a California corporation,

        Defendants.

No. C02-2183Z

ORDER

    This matter comes before the Court on defendants' motion to reconsider denial of motion to dismiss pursuant to Rule 12(b)(2), docket no. 19. The court has reconsidered its order dated December 23, 2002, docket no 18, and now GRANTS defendants' Mindshare and Topica's motion to reconsider. These defendants will be dismissed for lack of personal jurisdiction The Court DENIES the motion to reconsider as to defendants Memolink and Trifecta, for the reasons stated in this order and the Court's previous order of December 23, 2002

## I. BACKGROUND

    Defendants Memolink and Trifecta are nonresident businesses that market their goods and services through unsolicited commercial email ("spam") through the Internet See Defendants' Motion to Dismiss, docket no 4, at 4. Defendants Mindshare and Topica, also

ORDER  -1-

1 nonresident businesses, are application service providers (ASPs) that have assisted Memolink
2 and Trifecta in the transmission of commercial emails  See id

3       This court denied Defendants' Motion to Dismiss.  See Order Denying Defendants'
4 Motion to Dismiss for Lack of Personal Jurisdiction, docket no. 18.  Defendants moved this
5 court to reconsider denial of motion to dismiss  See Defendants' Motion to Reconsider,
6 docket no. 19.  This court requested the plaintiff to file a response to defendants' motion for
7 reconsideration, relating solely to personal jurisdiction over defendants Mindshare and
8 Topica as application service providers  See Minute Order, docket no. 23.

9       Defendant Mindshare is an application service provider[1] that provides email delivery
10 technology to its more than 800 clients.  See Bernard Decl , docket no. 20, at ¶ 2.  Bernard is
11 the Chief Operating Officer of Mindshare  Id. at ¶1.  Mindshare's technology allows its
12 customers to use their own email mailing lists and to disseminate messages to that customer's
13 recipients  Id.  Mindshare's customers log into Mindshare's system via a web interface,
14 upload their recipient lists in the system, upload their message, schedule a send time, and
15 then Mindshare's technology sends the message at the designated time.  Id.  Mindshare
16 claims to have strict policies against the use of its technology to disseminate unsolicited
17 email ("spam"), and only provides technology to customers that agree to send their emails to
18 opt-in recipients  Id  at ¶¶ 3 and 5.  Mindshare has no direct knowledge of the recipient
19 addresses or messages being sent through its system, and claims that individual review of the
20 massive numbers of emails sent by its 800 clients would be impossible.  Id. at ¶ 3
21 Mindshare's customers are exclusively responsible for maintaining and providing their email
22 lists, and Mindshare does not sell email lists nor exchange email lists between its customers.
23 Id. at ¶ 4.  Defendant Trifecta is a former client of Mindshare, and Trifecta's last email
24 message using the Mindshare system occurred on June 30, 2002.  Id. at ¶¶ 10 and 11

25

26       [1]Under the ASP model, a technology provider develops a technology and makes that technology
readily available via the internet

ORDER  -2-

Mindshare has had no other professional relationship with Trifecta, other than this legal matter, since June 30, 2002. Id. at ¶ 17.

Defendant Topica is an application service provider that provides a service that its clients use to transmit bulk emails to third parties  See Second McCaulley Decl., docket no 31, at ¶ 2. McCaulley is the Senior Director of Privacy and Standards at Topica. Id. at ¶ 1. Topica only provides its clients with the instrumentalities to transmit emails on a bulk basis, and its clients are entirely responsible for the email lists, substance or emails, and transmission of data  Id. at ¶2. Plaintiff Hodgell requested that Topica terminate Memolink as a client, but plaintiff allegedly refused to provide his email address to defendant Memolink. Id. at ¶¶ 6-8  Topica did not terminate Memolink as a customer, because Memolink did not violate Topica's policy for terminating customers for violation of their acceptable usage policies. Id. at ¶ 11  Topica's policy is to measure the number of complaints received from individuals regarding its customers, and to investigate and potentially terminate the accounts of customers who do not meet Topica's standards, such as receiving more than one complaint per 100,000 emails sent  Id. at ¶ 10.

Plaintiff alleges that defendants Memolink and Trifecta used Mindshare's Postmaster General and Topica's Email Publisher email list management services to send their spam to the plaintiff  See Notice of Removal, docket no 1, Ex A, at 4  Plaintiff specifically alleges that Mindshare began sending emails to him "on behalf of Memolink and Trifecta" on March 19, 2002, and that Topica began sending emails to him "on behalf of Memolink and Trifecta and other marketers" on April 26, 2002  See Plaintiff's Response to Defendants' Motion for Reconsideration, docket no. 24, at 2  There is a factual dispute whether plaintiff properly advised Mindshare and Topica of his email addresses that he alleges received spam, or whether he properly attempted to unsubscribe his email addresses  See Hodgell Decl., docket no 26, at ¶ 3-5, 11-12, see also Second McCaulley Decl., docket no 31, at ¶¶ 3-10; see also

Second Bernard Decl , docket no. 30, at ¶¶ 4-16  Plaintiff alleges that defendants Mindshare and Topica "are co-spammers     with their larger 'bulk mailers,' and are not just 'application service providers' ".  <u>See</u> Hodgell Decl., docket no. 26, at ¶ 7.  Further, Plaintiff alleges that defendants Mindshare and Topica have flawed business models and practices, allowing them to make profits from their spamming customers  <u>Id.</u> at ¶ 6.  Alternatively, defendants Mindshare and Topica argue that they merely provide a service, that each takes extraordinary steps to prevent use of their technology by their customers to disseminate unsolicited email, and that neither controls the email lists or content of the emails.  <u>See</u> Defendants' Motion to Reconsider, docket no. 19, at 7-8.

## II.  DISCUSSION

Under Local Civil Rule 7(h)(1), granting motions for reconsideration ordinarily requires a showing of manifest error in to prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence

### A.    <u>Jurisdiction</u>

Defendants now move to reconsider denial of motion to dismiss for lack of personal jurisdiction  There are two recognized bases for personal jurisdiction over nonresident defendants. (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the person in all matters, and (2) "specific jurisdiction" which arises out of the defendant's contacts with the forum giving rise to the subject litigation  <u>Indiana Plumbing Supply, Inc v  Standard of Lynn, Inc.</u>, 880 F  Supp. 743, 95 Daily Journal D.A R  10 (C.D. Cal  1995) (citing <u>Helicopteros Nacionales de Colombia, S A  v  Hall</u>, 466 U.S. 408, 414 (1984)).

When a motion to dismiss for lack of personal jurisdiction is made as a defendant's initial response to a complaint, Fed  R. Civ. P. 12(b)(2) controls and states that the court may consider evidence presented in affidavits to assist it in its determination and may also order discovery on the jurisdictional issues  <u>Doe v  Unocal Corp</u> , 248 F 3d 915, 922 (9th Cir.

1  2001) However, when a district court acts on a defendant's motion to dismiss without
2  holding an evidentiary hearing, the plaintiff need make only a prima facie showing of
3  jurisdictional facts to withstand the motion to dismiss Id; Data Disc, Inc v. Sys. Technology
4  Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). In this context, a "prima facie" showing
5  means that plaintiff has produced admissible evidence which, if believed, would be sufficient
6  to establish the existence of personal jurisdiction See WNS, Inc. v. Farrow, 884 F.2d 200,
7  203-204 (5th Cir. 1989) Unless directly controverted, the plaintiff's version of the facts is
8  taken as true Doe, 248 F 3d at 922 Conflicts in the evidence set forth in the parties'
9  affidavits must be resolved in the plaintiff's favor. Id

10 **B.**    **General Jurisdiction**

11    General personal jurisdiction exists when a nonresident defendant conducts
12 substantial and continuous business in the state of Washington. CTVC of Haw. Co , Ltd. v
13 Shinawatra, 82 Wn App 699, 709, 919 P 2d 1243 (1996). The parties agree that defendants
14 have not had sufficient contacts with Washington to subject them to general jurisdiction

15 **C.**    **Specific Jurisdiction**

16    Sitting in diversity, this Court may exercise specific jurisdiction over a nonresident
17 defendant only if jurisdiction is proper under Washington's long-arm statute and comports
18 with federal constitutional due process principles See Fireman's Fund Ins Co v. Nat Bank
19 of Coops , 103 F.3d 888, 893 (9th Cir 1996), Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d
20 1482, 1484 (9th Cir. 1993) Washington's long-arm statute, RCW 4.28 185, is co-extensive
21 with the outer limits of due process and as such prescribes that personal jurisdiction can only
22 be asserted over a non-resident defendant if the defendant has "minimum contacts" with the
23 forum state such that the exercise of jurisdiction does not "offend traditional notions of fair
24 play and substantial justice." Int'l Shoe Co v. State of Washington, 326 U S 310, 316
25 (1945)

26

A singular three-part test governs whether this Court has specific personal jurisdiction over nonresident defendants. Plaintiffs must demonstrate that (1) purposeful minimum contacts exist between the defendants and the state of Washington, (2) plaintiffs' injuries relate to or arise from those minimum contacts; and (3) the exercise of jurisdiction is reasonable and consistent with traditional notions of fair play and substantial justice. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir 1995); Grange Ins Ass'n. v. State, 110 Wn.2d 752, 758, 757 P 2d 933 (1988). All three prongs of the test must be satisfied before specific jurisdiction may be exercised  Id

**1.    Purposeful Direction or Availment - The "Effects" Test**

The purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the "effects" test derived from Calder v Jones, 465 U S. 783 (1984)  Calder stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the foreign state is the 'purposeful direction' of a foreign act having an effect in the forum state. Dole Food Co., Inc. v. Watts, 303 F.3d 1104 (9th Cir 2002) (citing Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986))  Based on Calder, the effects test requires that the defendant allegedly 1) *committed an intentional act, 2) expressly aimed at the forum state, 3) which caused a harm* that the defendant knew would likely be suffered by an entity in the forum state. Id

An Internet Service Provider (ISP) that merely contributes technology, equipment, servers, and IP numbers for its customers does not purposefully avail itself of doing business in the forum state  ALS Scan v. Digital Service Consultants, Inc., 293 F.3d 707, 714 (4th 2002)  In ALS Scan, Digital Service (the defendant) asserted that it was an ISP which provided bandwidth service to its customer, but that it was not affiliated in any way with the customer except through an arms-length customer relationship. Id  at 709  For the purposes of establishing personal jurisdiction, an Application Services Provider (ASP) that merely provides technology to allow its customers to disseminate their email messages to their own

email mailing lists is analogous to an ISP.  ALS Scan adopted the "sliding scale" articulated in Zippo Manufacturing Co v Zippo Dot Com, Inc., 952 F. Supp 1119 (W D Pa 1997) for defining when electronic contacts with a State are sufficient for personal jurisdiction  ALS Scan, 293 F.3d at 713. In Zippo, the court found that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportional to the nature and quality of commercial activity that an entity conducts over the Internet " Zippo, 952 F. Supp. at 1124.

ALS Scan described the Zippo "sliding scale" as involving two ends of a spectrum  ALS Scan, 293 F.3d at 713  At one end of the spectrum, personal jurisdiction is proper where a defendant clearly does business over the Internet, enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet.  Id.  At the opposite end, personal jurisdiction is not proper where a defendant simply posts information on a passive Internet Web site which is merely accessible in foreign jurisdiction.  Id  The ALS Scan Court adopted and adapted the Zippo sliding scale, concluding that even though the electronic signals from the defendant's facility were received in the state, and even though the defendant provided bandwidth, "its role as an ISP was at most passive.  Surely it cannot be said that Digital 'purposefully availed' itself of the privilege of conducting business or other transactions in Maryland." Id at 714.  Similarly, the defendants Mindshare and Topica merely played a passive role by providing e-mail distribution software and e-mail delivery technology to customers (Memolink and Trifecta), and surely did not purposefully avail themselves of the privilege of conducting business or other transactions in Washington.

ALS Scan adapted the Zippo model to conclude that personal jurisdiction exists over a person " . . when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the

State's courts." Id. at 714  The ALS Scan court held that an ISP that merely provided bandwidth to a third party and enabled that third party to create a website and send information over the Internet did not direct its electronic activity into a forum state, and did not manifest an intent to engage in a business or some other interaction in the forum state Id  The factual issue of whether the ISP's conduct in enabling a third party created a cause of action in the forum state was not reached, given that the ISP's conduct did not satisfy the first two prongs of the test for personal jurisdiction.  In this case, the conduct of defendants Mindshare and Topica does not satisfy the first two prongs of the ALS Scan test for personal jurisdiction, and this court does not need to resolve whether a cause of action exists under Washington law

Plaintiff incorrectly argues that jurisdiction is established by RCW 19 190.020(1) because defendants Mindshare and Topica assisted their customers in sending spam.  See Plaintiff's Response to Defendants' Motion for Reconsideration, docket no. 24, at 10.  RCW 19 190 is only relevant to the merits of plaintiff's case, and is not relevant to the constitutional requirements of personal jurisdiction.  Defendants correctly argue that Plaintiff fails to demonstrate purposeful availment by Mindshare and Topica prior to filing of the Complaint.  See Defendants' Reply in Support of Motion for Reconsideration, docket no. 29, at 4  citing Farmers Ins  Exch. v  Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) (providing that for purposes of personal jurisdiction, courts look to the contacts existing when the claim arose)

In Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir  1997), the Ninth Circuit held that, in order for a website to give rise to personal jurisdiction, the website must have some presence in that jurisdiction and that it is not sufficient that it merely operates a "passive" website.  The Cybersell court notes that determination of whether there are sufficient contacts to warrant personal jurisdiction depends on the level of interactivity and commercial nature of the exchange of information that occurs on a Web site  Id  at 418,

citing Zippo Manufacturing Co v Zippo Dot Com, Inc , 952 F Supp. 1119, 1124 (W D. Pa 1997) In Cybersell, the court held that registering a domain name identical to a trademark and posting a web site via such domain name on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. See Cybersell,130 F.3d at 418 There must be "something more" to demonstrate that the defendant purposefully directed his activity in a substantial way toward the forum state. See id.

In this case, multiple defendants are being charged with sending, assisting, or conspiring to send misleading and/or deceptive unsolicited commercial spam messages to a Washington resident. Although the actual spammer may have purposefully directed his activity toward the forum state, the plaintiff failed to produce any evidence that defendant Mindshare did more than provide e-mail delivery technology and software to customers, a passive action that is not sufficient to establish personal jurisdiction over Mindshare. Similarly, the plaintiff failed to produce any evidence that defendant Topica did more than provide e-mail delivery technology and software to its customers, a passive action that is not sufficient to establish personal jurisdiction over Topica. Neither Mindshare nor Topica did "something more" to demonstrate that the defendant purposefully directed its activity in a substantial way toward the forum state

Plaintiff relies on Verizon Online Services, Inc. v. Ralsky, 203 F Supp. 2d 601 (E.D VA 2002), for support. There, a Michigan spammer moved to dismiss an action in Virginia based on personal jurisdiction grounds and in the alternative to transfer venue to Michigan The court held that millions of spam sent to Verizon's subscribers through Verizon's email servers constituted sufficient minimum contacts to satisfy constitutional requirements. Verizon, 203 F. Supp 2d at 604

Plaintiff's reliance on Verizon is misplaced. Verizon had seven email servers located in Virginia and alleged that the defendants sent millions of spam messages through plaintiff's computer network over a period of several weeks See id at 607, 617 In determining

whether the assertion of jurisdiction over defendants was proper, the court focused on the number of email sent and the resulting harm to plaintiffs, reasoning that defendants "entered" Virginia when the spam "overloaded Verizon's servers." See id at 618 There are other similar federal cases in which plaintiff owners of internet service providers (ISPs) have successfully sued after suffering damages when defendants sent high volumes of spam via plaintiff's servers causing significant damage to plaintiff's business. (See e g., America Online, Inc v LCGM, Inc , 46 F Supp 2d 444 (E.D Va 1998) However, there are no federal cases cited in which an ISP or an ASP is held responsible for the spamming conduct of its customers [2]

## 2. Claims Arising out of Defendants' Activities

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's claim arises out of a defendant's forum related activities Doe v. American Nat Red Cross, 112 F.3d 1048, 1051 (9th Cir 1997). The "arising out of" requirement of the specific jurisdiction test is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen See Terracom v. Valley Nat Bank, 49 F.3d 555, 560 (9th Cir 1995)

Here, Mindshare's and Topica's software and technology were used by Memolink and Trifecta to send e-mails to Washington residents However, Mindshare and Topica did not have any direct role in or control over the content of any information posted by their clients Memolink and Trifecta, and did not have direct control over the email lists used by their customers Plaintiff does not establish that 'but for' these defendant's efforts, he would not have been harmed. Plaintiff cannot meet the 'but for' test in regard to defendants Mindshare and Topica

___

[2] Plaintiff relies on State v. Heckel, 143 Wn.2d 824 (2001) In Heckel, the court held that RCW 19.190 doesn't violate the dormant Commerce Clause Id at 840. However, Heckel provides plaintiff with no support under the facts of this case, where plaintiff offers no evidence that the defendants Mindshare and Topica were the spammers.

# III. CONCLUSION

The prior order denying the motion to dismiss defendants Mindshare and Topica for lack of personal jurisdiction as to defendants Mindshare and Topica is vacated. Their passive role as application service providers was not sufficient for personal jurisdiction. Alternatively, there is no dispute that Memolink and Trifecta sent unsolicited commercial email to Washington residents, and it was not manifest error to deny the motion to dismiss defendants Memolink and Trifecta for lack of personal jurisdiction.

For the reasons stated, the court GRANTS IN PART the motion of defendants to reconsider denial of motion to dismiss for lack of personal jurisdiction for defendants Mindshare and Topica, docket number 19. The court DENIES IN PART the motion of defendants to reconsider denial of motion to dismiss for lack of personal jurisdiction as to defendants Memolink and Trifecta.

IT IS SO ORDERED.

DATED this ___ day of February, 2003.


_____
THOMAS S. ZILLY
UNITED STATES DISTRICT JUDGE